RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 6/10/13

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LISA LYNN LABORDE,<br>    Appellant | CIVIL ACTION<br>SECTION "P"<br>1:12-CV-02688 |
| VERSUS | |
| U.S. COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Appellee | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Lisa Lynn Laborde ("Laborde") filed an application for supplemental security income benefits ("SSI") on February 24, 2010, alleging a disability onset date of January 1, 2002 (Tr. p. 116/304) due to pneumothorax, stage I colon cancer, and foot problems (Tr. p. 132/304). That application was denied by the Social Security Administration ("SSA") (Tr. p. 91/304).

A de novo hearing was held before and administrative law judge ("ALJ") on February 17, 2011, at which Laborde appeared with her attorney (Tr. p. 25/304). The ALJ found that, although Laborde suffers from colon cancer, pneumothorax, and bilateral bunionette deformity, she does not have a severe impairment that will significantly limit her ability to perform basic work-related activities for twelve consecutive months and, therefore, was not under a disability at any time through the date of her opinion on April 14, 2011 (Tr. pp. 14-20/304).

Laborde requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Laborde next filed this appeal for judicial review of the Commissioner's final decision, which raises the following issues (Doc. 10):

> 1. The ALJ makes specific reference to the standard announced in <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985), but the decision fails to comply with the substantive requirements of that standard.
>
> 2. The claimant's allegations were improperly rejected without the assessment of credibility which is required by the regulations.

The Commissioner filed a brief in response to Laborde's appeal (Doc. 11), to which Laborde filed a reply (Doc. 12). Laborde's appeal is now before the court for disposition.

Eligibility for SSI Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful

employment that exists in the national economy. 42 U.S.C. § 1382(a)(3). The earliest month for which an eligible SSI claimant can receive benefits is the month following the month his application was filed, 20 C.F.R. § 416.335, or the month following the month during the pendency of the application that the claimant meets all the eligibility requirements, 20 C.F.R. § 416.330(a).

<u>Summary of Pertinent Facts</u>

Laborde was 43 years old at the time of her 2011 administrative hearing, had a high school education (Tr. p. 133/304), and had past relevant work as a laboratory technician at a canning factory (1990-1994, 2002) and a farm laborer (1994-1995) (Tr. p. 134/304).

1. Medical Records

Laborde complained of pelvic pain, worse with menses, in August and November 2002 and was prescribed Anaprox (Tr. pp. 246-247/304). In November 2002, Laborde's pap smear showed atypical with ASCUS (atypical squamous cells of undetermined significance) (Tr. pp. 246-304).

In January 2003, Laborde was treated for low back pain radiating down her left leg. A pap smear was negative (Tr. p. 258/304), and a pelvic sonogram was essentially normal (Tr. p. 259/304). X-rays of her lumbo-sacral spine were negative (Tr. p. 260/304), ultrasounds of her pelvis and left breast were normal (Tr. pp. 261-262/304), and a mammogram was normal (Tr. p. 263/304).

It was noted that Laborde smokes fifteen cigarettes a day and she had been diagnosed with pneumothorax[1] (Tr. p. 244/304). Laborde had two previous tube thoracostomies in 1995 for spontaneous pneumothoraces (Tr. pp. 201, 204, 299/304). However, her lungs were clear in February 2010 and February 2011 (Tr. pp. 205, 300/304).

In January 2006, Laborde reported she has bilateral back pain for 3-4 days after each birth control (Depo Provera) injection, which she had been taking since January 2004 (Tr. p. 238/304). In August 2006, Laborde reported having pelvic pain for one month, was diagnosed with pelvic inflammatory disease, and was prescribed Ceftriaxone (Tr. p. 236/304). In October 2006, Laborde continued to complain of pelvic pain as well as back pain radiating down her leg (Tr. p. 233/304).

In January 2008, Laborde complained that the sides of her feet hurt (Tr. pp. 194-195/304). In November 2009, Laborde was referred to a podiatrist for treatment of her calluses and bunions (Tr. p. 181/304). X-rays of her feet showed a bilateral bunionette

---

[1] A collapsed lung, or pneumothorax, is the collection of air in the space around the lungs. This buildup of air puts pressure on the lung, so it cannot expand as much as it normally does when you take a breath. MEDLINEplus Health Information, Medical Encyclopedia: Pneumothorax, *available at* http://www.nlm.nih.gov/medlineplus/ency/article/000087.htm (a service of the U.S. National Library of Medicine and the National Institutes of Health).

4

deformity,[2] plantar flexed first metatarsal (bilateral) with an underlying skin disturbance, onychomycosis (fungal nail infection), and sesamoiditis/displaced sesamoid[3] (Tr. pp. 200-201, 273-274/304).  Surgery to remove the bilateral medial sesamoids, bunionette correction/elevational osteotomy bilateral fifth metatarsals, and excision of a lesion on the right foot were recommended, as well as continued arch support (Tr. pp. 200-201/304).  Nystatin cream was prescribed for her great right toenail (Tr. pp. 200-201/304).

In February 2010, Laborde was evaluated at the Marksville Family Medical Center for complaints of abdominal pain in the pelvic region with rectal bleeding; her family history of colon cancer was noted (Tr. p. 176/304).  A colonoscopy revealed a 35 cm.

---

[2] A Tailor's bunion, also called a bunionette, is a prominence of the fifth metatarsal bone at the base of the little toe. The metatarsals are the five long bones of the foot. The prominence that characterizes a tailor's bunion occurs at the metatarsal "head," located at the far end of the bone where it meets the toe.  Foot Health Facts, by the American College of Foot and Ankle Surgeons, at http://www.foothealthfacts.org/footankleinfo/tailors-bunion.htm.

[3] A sesamoid is a bone embedded in a tendon. Sesamoids are found in several joints in the body. In the normal foot, the sesamoids are two pea-shaped bones located in the ball of the foot, beneath the big toe joint.  Sesamoiditis. This is an overuse injury involving chronic inflammation of the sesamoid bones and the tendons involved with those bones. Sesamoiditis is caused by increased pressure to the sesamoids. Often, sesamoiditis is associated with a dull, longstanding pain beneath the big toe joint. The pain comes and goes, usually occurring with certain shoes or certain activities.  Foot Health Facts, by the American College of Foot and Ankle Surgeons, at http://www.foothealthfacts.org/footankleinfo/Sesamoid_Injuries.htm.

adenocarcinoma lesion (Tr. pp. 205-206/304). Laborde underwent a colon resection (partial colectomy with primary anastomosis) in February 2010[4] (Tr. pp. 211-212/304).

In June 2010, Laborde began treatment at the LSU Health Sciences Center for genetic testing for colorectal/endometrial cancer, was found to be 22% at risk for the gene mutation, and was told to return if her tumor was MSI (microsatellite instability) positive (Tr. pp. 225-227/304), which it was not (Tr. p. 299/304). Laborde's partial colectomy healed satisfactorily (Tr. p. 267/304).

In January 2011, Laborde had a surgical follow-up at the LSU Health Sciences Center; she was 5'4" tall, weighed 132 pounds, was noted to be a smoker, and her test results were normal (Tr. pp. 285-291/304). In February 2011, a CT scan of Laborde's abdomen showed multiple tiny, benign-appearing, hepatic cysts but was otherwise normal (Tr. pp. 294-295/304). A colonoscopy showed no recurrence of colon malignancy and no evidence of polyps (Tr. pp. 298-304).

2. 2011 Administrative Hearing

At the February 17, 2011 administrative hearing, Laborde testified that she lives with her parents and her twelve-year-old daughter in Mansura, Louisiana (Tr. p. 31/304). Laborde testified

---

[4] Although the ALJ found Laborde underwent colon surgery in March 2010, the medical records indicate she was hospitalized for the surgery from February 26, 2010 through March 2, 2010 (Tr. pp. 211-212/304). Laborde's application for benefits was filed on February 24, 2010.

that she completed high school but does not have any formal job training (Tr. p. 31/304). Laborde testified that she has not worked since she filed her application in February 2010 (Tr. pp. 31-32/304), but recently applied for a part time job (fifteen hours per week) (Tr. p. 45/304). Laborde testified she did not get the job because of all the medical appointments she had in February, but she would like to return to work part time (Tr. p. 45/304). Laborde testified she does not think she can work forty hours a week, even in a sedentary job (Tr. p. 45/304). Laborde currently receives Medicaid (Tr. pp. 30, 32/304), child support, and food stamps (Tr. p. 31/304).

Laborde testified she was diagnosed with borderline stage II colon cancer in February 2010, underwent surgery in March 2010, and did not require chemotherapy or radiation because it had not gone into her lymph nodes (Tr. pp. 32-33/304). Laborde testified that Dr. Bordelon told her the tumor had probably been in her colon about five years, causing her symptoms of abdominal pain, pelvic pain, and back pain (Tr. p. 44/304). However, Laborde testified she still has back pain (Tr. p. 44/304).

Laborde also testified she has pneumothorax, or a lung condition, for which she has not had treatment since February 2010 and for which she uses an inhaler at least three times a day (Tr. p. 34, 304). Laborde testified she had been scheduled for foot surgery in March 2010, but she put it off due to her colon cancer

7

surgery and has never returned to the podiatrist (Tr. p. 35/304). Laborde testified that she has not been released by any of her doctors (Tr. p. 43/304).

Laborde testified that her primary symptom now is constant fatigue, which Dr. Bordelon told her was caused by the surgery (Tr. pp. 35-36/304).

Laborde testified that she gets up in the morning and sends her twelve-year-old to school, cleans their rooms, then lays down for a while (Tr. p. 36/304). When Laborde gets up again, she does laundry, and she cooks about once a week; the rest of the time they eat sandwiches (Tr. p. 36/304). Laborde testified that her chores take her about two and a half to three hours (Tr. p. 42/304), during which she takes rest breaks (Tr. p. 39/403). Laborde testified that she lays down in a recliner for a total of about four hours each day (Tr. p. 36/304). Laborde testified that she goes to Wal-Mart once a week, uses a regular cart, and tries to finish quickly because she gets tired (Tr. p. 38/304). Laborde testified that she does not go out and visit anyone, but some people visit her at home (Tr. p. 38/304). Laborde also testified that she does not attend church or any clubs (Tr. p. 38/304), and does not do yard work (Tr. p. 42/304). Laborde attends her daughter's school conferences, which are mandatory (Tr. p. 42/304). Laborde does not leave the house and go out unless she has to (Tr. p. 42/304). Laborde testified that she used to enjoy yard work,

but does not have the energy to do it anymore, and does not do anything for pleasure anymore (Tr. p. 43/304). Laborde prefers to be by herself about three days a week (Tr. pp. 43-44/304).

Laborde testified that she talked about feeling depressed to one of her doctors, who offered to prescribe an anti-depressant, but Laborde did not want it; she was not referred to a mental health professional (Tr. p. 39/403).

Laborde testified that she does not have any pain other than abdominal pain caused by constipation, which is normal after colon surgery; she takes a laxative about twice a week (Tr. p. 38/304). Laborde testified that she does not take any medicine for pain other than Ibuprofen, and she takes Nexium for her gastric problems (Tr. p. 40/403).

Laborde testified that she can stand for about 25 minutes at a time, walk for about 30 minutes, and sit for about 30 minutes; she is tired after doing any of these activities for that length of time (Tr. pp. 40-41/304). Laborde further testified she can lift or carry about 20 pounds, and does not have any problems using her hands (Tr. p. 41/403). Laborde testified that, since February 2010, her condition has gotten worse because of fatigue, and she does not want to do anything or go anywhere (Tr. p. 41/403).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R.

§416.920(a). The sequential process required the ALJ to determine whether Laborde (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Laborde has not engaged in substantial gainful activity since February 24, 2010, the date she applied for SSI benefits (Tr. p. 16/304), and that she does not have any severe impairments (Tr. p. 16/304). The ALJ then found that, from February 24, 20104 (the date of her application) through

April 14, 2011 (the date of the ALJ's decision), Laborde was not under a disability as defined in the Social Security Act (Tr. p. 20/304). The ALJ's analysis thus ended at Step 2, with a finding that Laborde is not disabled (Tr. p. 20/304).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th

Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

### Law and Analysis

### Issue 1 - Stone Standard

First, Laborde contends the ALJ made a specific reference to the standard announced in Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), but her decision failed to comply with the substantive requirements of that standard. Laborde contends the ALJ failed to properly find her impairments are non-severe.

In Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit noted that an impairment can be considered as not "severe" only if it is *a slight abnormality which has such a minimal effect on the claimant that it would not affect his ability to work*, and held that some impairments are so slight that the ability of the

claimant to work can be decided without a full evaluation of vocational factors. Thus, the fact finder is entitled to follow a sequential process that disposes of those cases at that early stage. The Fifth Circuit further concluded that it would in the future assume the ALJ and the Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to the <u>Stone</u> opinion or another of the same effect, or by an express statement that the construction the Fifth Circuit gave to 20 C.F.R. § 404.1520(c) (1984) is used. Unless the correct standard is used, the claim must be remanded to the Commissioner for reconsideration. <u>Stone</u>, 752 F.2d at 1106.

In the case at bar, since the ALJ made a specific reference to <u>Stone</u> and it's standard (Tr. p. 32/304), the undersigned will not assume the ALJ applied the incorrect standard to the severity requirement. The ALJ then discussed the medical evidence, noting that Laborde has not been on any medications since May 2010, and the CT scan and colonoscopy in February 2011 showed no symptoms and no evidence of polyps or recurrent malignancy (Tr. p. 19/34). The ALJ concluded that Laborde's medically determinable impairments (colon cancer,[5] pneumothorax, and bilateral bunionette deformity)

---

[5] The ALJ found Laborde has a medically determinable impairment of "colon cancer" (Tr. p. 16/304); Laborde had colon cancer for two days after she filed her application for benefits, then the cancer was surgically removed. Laborde is now status post-colon cancer/post-partial colectomy, the result which, Laborde alleges, is severe fatigue.

13

are non-severe (Tr. pp. 19, 20/304).

Laborde contends the ALJ's application of the statutory regulation defining a severe impairment as one which significantly limits the ability to do basic work activities, 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.92o, is different from the Stone standard, citing Boone v. Commissioner of Social security, 2010 wl 4442281 (N.D.Tex. 2012).

Actually, in Stone the court defined a *nonsevere* impairment as "a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." In Hampton v. Bowen, 785 F.2d 1308 (5th Cir. 1986), the Fifth Circuit cautioned that the ALJ's opinion must be read carefully to ensure the use of the "slight impairment standard" in a nonseverity determination. The Court explained that Stone does not require a wholesale remand of all severity cases simply because the ALJ did not use "magic words," and that remand is appropriate only where there is no indication the ALJ *applied* the correct standard.

The ALJ found that Laborde's complaints of lingering severe fatigue, one year after the surgery which removed her cancer, were not supported by the medical evidence, and noted that she had not complained to her doctors of severe fatigue during her check-ups in January 2011 (Tr. p. 19/304). The ALJ further noted that Laborde had not adduced any medical or other evidence to show that either

her pneumothorax or bilateral bunionette deformity limit her ability to work in any way, and that she had not sought treatment for either condition since 2010 (Tr. p. 19/304).

Since there is no medical evidence to support Laborde's complaints of severe fatigue, the ALJ appears to have correctly used the "slight impairment standard" in assessing Laborde's medical impairments and finding they do not preclude her from working.

Since substantial evidence supports the Commissioner's final decision that Laborde does not have a severe impairment, this issue is meritless.

Issue 2 - Credibility Assessment

Laborde also contends the ALJ improperly rejected her allegations of debilitating fatigue without assessment her credibility, as required by the regulations.

A claimant's symptoms will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §404.1529(c)(4). Subjective complaints must be corroborated by objective medical evidence. Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2000).

The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.

15

<u>Elzy v. Railroad Retirement Bd.</u>, 782 F.2d 1223, 1225 (5th Cir. 1986); <u>Loya v. Heckler</u>, 707 F.2d 211, 215 (5th Cir. 1983). Such a credibility determination is within the province of the ALJ. <u>Carrier v. Sullivan</u>, 944 F.2d 243, 247 (5th Cir. 1991); <u>Wren v. Sullivan</u>, 925 F.2d 123, 128-29 (5th Cir. 1991). Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints. <u>Falco v. Shalala</u>, 27 F.3d 162, 163-64 (5th Cir. 1994).

The ALJ made the following findings as to Laborde's credibility (Tr. pp. 18-20/304):

> "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some often alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no severe impairment or combination of impairments for the reasons explained below. ...Her impairment [colon cancer] has had more than a minimal adverse effect on her ability to function, but medical records show that her condition does not meet duration requirements of 12 continuous months or more. ...There is no evidence that she had [foot] surgery or any further treatment, and she has [sic] no doctor imposed limitations due to this condition. The claimant reported a history of pneumothorax, but there is no evidence that she has received any treatment since February 2010, and there is no indication that she has [sic] any doctor imposed restrictions due to this condition. Further, the claimant has complaints of constipation which are not corroborated by medical evidence. She alleges to [sic] having severe fatigue and she reportedly spends at least 4-5 hours a day at rest. ... Certainly she would have had a period of recovery following the abdominal surgery in March 2010. However,

16

the evidence does not support her allegations of on-going symptoms. ...While the undersigned does not doubt that the claimant is leading the sedentary life she described, there is no medical evidence of a condition reasonably likely to have caused the extreme fatigue that she reports."

Since the ALJ in this case has made the mandatory indication of the basis for her credibility choices concerning Laborde's complaints, and since her choices are not unreasonable, her finding that Laborde's fatigue would not prevent her from performing work is proper. <u>Carry v. Heckler</u>, 750 F.2d 479, 485-86 (5th Cir. 1985). Substantial evidence supports the Commissioner's conclusion that Laborde is not disabled by fatigue.

<u>Conclusion</u>

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Laborde's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN fourteen(14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 10th day of June 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE